**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
**ROCHESTER COURTHOUSE**

| | |
|---|---|
| Derrik Dildine, individually and on behalf of all others similarly situated, | 6:21-cv-06668 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| 7-Eleven, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     7-Eleven, Inc. ("defendant") manufactures, packages, labels, markets, and sells Extra Strength Energy "shots" under the 7-Select brand in flavors including Watermelon Lime, purporting to have "100% Natural Flavors" ("Product").



2.      Defendant markets the Product with the prominent statement, "100% NATURAL FLAVORS," above pictures of the named ingredients, i.e., a slice of watermelon and a wedge of lime.



3.      The representation that the Product has "100% Natural Flavors" appeals to the more than seven out of ten consumers who avoid artificial flavors, as these synthetic ingredients are believed to be associated with detrimental health and environmental effects.[1]

4.      By identifying the Product as having "100% Natural Flavors," with a picture of watermelon and limes, consumers expect only natural flavors, because that is what the label says.

5.      Federal and identical state regulations prohibit false and deceptive identification of the source of a food or beverage's characterizing flavors.

6.      These regulations require the Product to disclose whether its characterizing flavors are from the fruits depicted on the front label, natural ingredients from fruits other than those pictured on the label, and/or artificial, chemical sources, such as petroleum byproducts. 21 C.F.R.

---

[1] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

§ 101.22.

7.      Natural flavor is defined as flavoring compounds from natural sources, such as "a

spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or

similar plant material, meat, seafood, poultry, eggs, dairy products… whose significant function

in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

8.      Artificial flavor is any defined as "any substance, the function of which is to impart

flavor," that is not obtained from natural source materials, including "a spice, fruit or fruit juice,

vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material." 21

C.F.R § 101.22(a)(1).

## I.      "100% NATURAL FLAVORS" IS FALSE AND MISLEADING

9.      Taste is the combination of sensations arising from specialized receptor cells located

in the mouth.

10.     Sweetness and tartness are key contributors to the flavors of watermelon and lime.

11.     The Product's ingredients include "Natural Flavors" and "Malic Acid."



**OTHER INGREDIENTS:** PURIFIED WATER, NATURAL FLAVORS,
MALIC ACID, CITRIC ACID, SUCRALOSE, POTASSIUM SORBATE,
SODIUM BENZOATE, AND CALCIUM DISODIUM EDTA (TO
PROTECT FRESHNESS)

12.     Malic Acid (molecular formula C4H6O5) is the common name for 1-hydroxy-1, 2-

ethanedicarboxylic acid.

13.     Malic Acid has two isomers, or different arrangements of atoms in the molecule, L-Malic Acid, and D-Malic Acid. 21 C.F.R. § 184.1069.

14.     L-Malic Acid occurs naturally in various fruits and provides tartness.

15.     D-Malic Acid does not occur naturally.

16.     D-Malic Acid is most commonly found as a racemic mixture, DL-Malic Acid, which is commercially made from petroleum products.

17.     Based on laboratory analysis, the Product contains DL-Malic Acid.

18.     The sensory qualities of watermelon is determined by its ratio of sugar to acids.

19.     As the main acid in watermelon, malic acid provides a tart taste to balance the sweetness.

20.     Malic acid is the second most predominant acid in lime, a fruit known for its sour taste.

21.     The Product could have used natural, L-Malic Acid, or more natural watermelon and natural lime flavor.

22.     However, defendant used artificial DL-Malic Acid because it was lower-priced and/or more accurately resembled the natural watermelon and natural lime flavor.

23.     DL-Malic Acid is not a "natural flavor" as this term is defined by federal and state regulations, and as understood by reasonable consumers.

24.     DL-Malic Acid is derived from petroleum products and is an artificial flavor and provides flavoring to the Product.

25.     DL-Malic Acid could function as a flavor enhancer or PH balancer if the flavor imparted by malic acid was not a core component of watermelon and lime.

4

26.    A flavor enhancer is "added to supplement, enhance, or modify the original taste and or aroma of a food without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11).

27.    PH balancers are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

28.    DL-Malic Acid enhances and simulates the Product's watermelon and lime taste.

29.    The Product's front label is misleading because it states, "100% Natural Flavors."

30.    Consumers are misled by expecting the taste comes exclusively from natural flavoring and natural flavors.

31.    Consumers are unable to learn the malic acid listed in the ingredients is the artificial version without a chemistry kit.

## II.    CONCLUSION

32.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

33.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

34.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

35.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

36.    The Product is sold for a price premium compared to other similar products, no less than $2.49 for 2 oz, a higher price than it would otherwise be sold for, absent the misleading

representations and omissions.

## Jurisdiction and Venue

37.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

38.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

39.    Plaintiff Derrik Dildine is a citizen of New York.

40.    Defendant 7-Eleven, Inc. is a Texas corporation with a principal place of business in Irving, Dallas County, Texas.

41.    Defendant transacts business within this district through its numerous stores within the District – which it supplies and stocks on a regular basis.

42.    The parties are citizens of different states.

43.    Venue is in this District because plaintiff resides in this district and the actions giving rise to the claims occurred within this district, Plaintiff's purchase of the Product and awareness of the issues described herein.

44.    Venue is in the Rochester division because Plaintiff resides in Chemung County.

## Parties

45.    Plaintiff Derrik Dildine is a citizen of Horseheads, Chemung County, New York.

46.    Defendant 7-Eleven, Inc. is a Texas corporation with a principal place of business in Irving, Texas, Dallas County.

47.    7-Eleven is a multinational chain of convenience stores founded in 1927 as an icehouse storefront in Dallas.

48.    There are over 9,500 7-Eleven stores in the United States.

49.     While 7-Eleven stores sell leading national brands, they sell a large number of products under their private label, 7-Select.

50.     Private label products are made by third-party manufacturers and sold under the name of the retailer.

51.     Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

52.     Products under the 7-Select brand have an industry-wide reputation for quality and value.

53.     In fact, Defendant stated that in releasing products, "under the 7-Select name, [their] first and foremost requirement was to create high-quality products that were equal to or better than the national brands."

54.     That 7-Select branded products met this high bar was proven, when "[F]ocus groups verified that [they] exceeded that goal by scoring taste, texture and flavor profiles higher than the name brand equivalent in every case."

55.     Private label products generate higher profits for retailers, because national brands spend significantly more on marketing, contributing to their higher prices.

56.      A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

57.     Private label products under the 7-Select brand benefit by their association with consumers' appreciation for the 7-11 brand as a whole.

58.     The development of private label items is a growth area for 7-11, as they "selected only top suppliers to develop and produce 7-Select" products.

59.     The Product is sold at the almost one thousand 7-11 locations in New York, and available to consumers online from partnerships between 7-11 and delivery services.

60.     Plaintiff bought the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Defendant's stores in or around Elmira, between August and September 2021, among other times.

61.     Plaintiff bought the Product because he expected it would contain "100% Natural Flavors," only be flavored from natural flavoring, and not contain artificial flavoring.

62.     Plaintiff bought the Product at or exceeding the above-referenced price.

63.     Plaintiff relied on the representations identified here.

64.     Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

65.     Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

66.     The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

67.     Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

68.     Plaintiff has purchased fewer items under the 7-Select brand based on his knowledge of the representations indicated here and wants to resume purchasing items under the 7-Select brand but is reluctant to do so.

<u>Class Allegations</u>

69.     Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following

classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged.

> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Kansas, Wyoming, and Delaware, who purchased the Product during the statutes of limitations for each cause of action alleged

70.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

71.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

72.    Plaintiff is an adequate representative because his interests do not conflict with other members.

73.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

74.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

75.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

76.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

77.    Plaintiff incorporates by reference all preceding paragraphs.

78.    Plaintiff and class members desired to purchase a product that contained only natural flavoring.

79.     Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

80.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

81.     Plaintiff relied on the representations.

82.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

83.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

84.     Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

85.     As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

86.     In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

87.     The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained only natural flavoring and

10

"100% Natural Flavors."

88.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

89.    This duty is based on Defendant's outsized role in the market for this type of Product, a trusted retailer, known for its convenience.

90.    The Product is intended to be a "convenient" way for consumers to deliver energy, through its caffeine content.

91.    Thus, the Product is synonymous with 7-Eleven, and therefore has a high level of trust with consumers, more so than other types of 7-Select products, like 7-Select iced tea.

92.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

93.    Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

94.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised as having "100% Natural Flavors" and only natural flavoring.

95.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

96.    Defendant had a duty to truthfully represent the Product, which it breached.

97.    This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodian of the 7-Select brand, selling "convenient" energy in the form of 2 oz shots, in a convenience store.

98.     Consumers go to convenience stores because they provide what consumers want "in the moment," which includes energy shots.

99.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a globally recognized and trusted brand.

100.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

101.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

102.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained only natural flavoring and "100% Natural Flavors."

103.    Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

104.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the

challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 30, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com